GEORGE B. RITCHIE & Co., Appellant, *v.* PAUL PUTTMANN, INC., Respondent.

First Department, June 3, 1927.

Food — action to recover amount plaintiff was compelled to pay United States government under bond furnished to obtain release of 100 bags of gelatine — defendant, purchaser of goods, knew of restrictions, but sold same for food purposes without governmental inspection — evidence establishes that sale was made subject to governmental restrictions and that defendant agreed to hold gelatine pending examination by Federal authorities — defendant is liable for amount paid by plaintiff on its bond.

This is an action to recover the amount which the plaintiff was compelled to pay to the United States government on a bond furnished the government, pursuant to section 11 of the Food and Drugs Act of 1906. The bond was furnshed to obtain the release of 100 bags of gelatine and to assure the authorities that the same would be sold as technical gelatine and not for consumption as food. The evidence shows that the defendant purchaser knew of the Federal restrictions, but nevertheless sold the gelatine for food purposes without governmental inspection. The evidence also shows that the purchase was of technical gelatine under an agreement that the same would be sold as such and that the defendant would hold the gelatine pending examination and report by the Federal authorities, and that it violated this contract, the effect of which was to compel the plaintiff to pay the amount of the bond. Plaintiff is entitled to recover from the defendant the amount it paid to the Federal authorities.

APPEAL by the plaintiff, George B. Ritchie & Co., from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 6th day of November, 1925, upon the verdict of a jury rendered by direction of the court pursuant to a stipulation that the case be tried before the court without a jury and that the verdict be directed with the same force and effect as though a jury were present.

*David Steckler*, for the appellant.

*Morris Blau*, for the respondent.

MARTIN, J. The plaintiff was compelled to pay the sum of $2,443.59 to the Federal authorities under a bond furnished pursuant to section 11 of the Food and Drugs Act of 1906 (34 U. S. Stat. at Large, 772, chap. 3915), which bond was furnished to obtain the release of 100 bags of gelatine and to assure such authorities that the same would be sold as technical gelatine and not for consumption as food. The representatives of the Department of Agriculture refused permission to bring this gelatine into the country. Subsequently it was admitted under a bond on condition that it would be sold for technical purposes only. The defendant, which became the purchaser of the goods from the plaintiff, knew of the Federal restrictions, but nevertheless caused the gelatine to be sold for food purposes without governmental inspection.

After the government had refused to pass the goods for edible use because of their arsenic, zinc and copper content, defendant's representative advised that they be returned to Europe and reimported as technical gelatine, indicating that the defendant would purchase the same, on its return to this country, at a price of ten cents a pound less than the price which would have been paid for an edible product. Before the goods arrived on their reimportation, defendant frequently inquired for them, and four or five days prior to actual arrival defendant bought the goods as technical gelatine.

The record further shows that on reimportation the goods were never in the physical possession of the plaintiff; but to give an impression to the contrary, there is an attempt to make it appear that certain events which really happened in 1921 took place in 1920; and it is defendant's assertion that the goods were bought on the understanding that they could be sold as a food product. It is virtually admitted that the purchase made was of technical gelatine.

Mr. Puttmann, of the defendant corporation, had imported gelatine for years, attending to the Customs House formalities in connection therewith. There is no doubt that the defendant

knew the government looked to the importer to hold the goods for examination and report.

After reimportation the plaintiff was notified that the examination disclosed that the gelatine was adulterated and that a hearing for exclusion would be held on March 12, 1921. Thereupon there were conversations between the representatives of the plaintiff and defendant, and an affidavit was prepared for verification by the users of the gelatine that the government might be assured that the same would be used as technical gelatine. When defendant's representative was confronted on an examination before trial with this affidavit, after having testified that the goods were bought as edible, he refused to answer questions under the privilege of refusing to incriminate himself.

It also appears that while the goods were still on the dock, defendant's representatives took a sample therefrom, and after blending the same with the product of a domestic manufacture, had an analysis prepared for the government's representatives in case of a subsequent prosecution.

The trial justice decided the case upon the theory that the gelatine was purchased without restriction, although there appears in evidence an affidavit reading in part as follows:

" This is to certify that we have purchased from George B. Ritchie & Co. Inc. New York City, New York.

" G. B. R. 1/100    100 bags *Technical Gelatine.*

" Imported by them ex S/S Brookvale Feby 7/1921 *we purchased the goods as technical gelatine, and same will be sold to the trade as technical gelatine, for technical gelatine purposes.*"    (Italics are the writer's.)

It was fairly averred and clearly proved that defendant agreed to hold the gelatine pending examination and report; that it was sold to defendant on the understanding that it was not to be resold as edible gelatine, defendant knowing the consequences to plaintiff on the bond for violation in this respect.

The judgment should, therefore, be reversed, with costs, and judgment directed in favor of plaintiff, with costs.

DOWLING, P. J., MERRELL, O'MALLEY and PROSKAUER, JJ., concur.

Judgment reversed, with costs, and judgment directed in favor of the plaintiff, with costs.